UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
UNITED STATES OF AMERICA,                                    :    05 CR 457 (ARR)
                                                             :
            -against-                                        :    OPINION AND ORDER
                                                             :
GLENN MARCUS,                                                :
                                                             :
                        Defendant.                           :
                                                             :
------------------------------------------------------------ X

ROSS, United States District Judge:

Having received defendant Glenn Marcus's letter of January 25, 2007, the court notes the defendant's continued opposition to the court's rulings limiting cross-examination on certain aspects of the identity of two of the government's witnesses, known as CS1 and CS2. In his letter, the defendant (1) recalls his opposition to the government's in limine motion to restrict disclosure of CS1 and CS2's identifying information, as set forth in his letter of November 6, 2006; (2) recommends that the court impose a gag order prohibiting the press from disclosing the disputed aspects of the witnesses' identity; and (3) recommends, in the alternative, that the witnesses testify using their first names only and that the court provide an instruction to the jury explaining the reasons for this measure. For the reasons explained below, the court determines that its rulings adequately respect the defendant's rights under the Confrontation Clause while safeguarding the government's witnesses from reprisals based on their trial testimony. The court also rejects the gag order proposed by the defendant and adopts his alternative recommendation.

In advancing the contention that the defendant's rights under the Confrontation Clause of the Sixth Amendment require full disclosure of the witnesses's names, place of employment, and

home addresses, the defendant relies on Smith v. Illinois, 390 U.S. 129 (1968), and Alford v. United States, 282 U.S. 687 (1931). Taken together, these cases have been interpreted by the Second Circuit to safeguard two main interests of the defendant: (1) obtaining information needed for in-court and out-of-court investigation of the witness; and (2) enabling defense counsel to elicit information that might be relevant to the jury's deliberations as to the credibility or knowledgeability of the witness. See United States v. Marti, 421 F.2d 1263, 1266 (2d Cir. 1970). In the event the government seeks to limit disclosure of identifying information in open court, the government must provide a reason for the limitation. Id. (citing Smith, 390 U.S. at 134 (White, J., concurring)). "[T]he reason may be that the answer may subject the witness to reprisals or that the question is being used to humiliate or annoy the witness." Id. (citing Alford, 282 U.S. at 694). The defendant is then required to demonstrate a "particularized need" for disclosure of the relevant information, which the court weighs against the risks to the witness. See United States v. Bennett, 409 F.2d 888, 901 (2d Cir. 1969); see also United States v. Cavallaro, 553 F.2d 300, 305 (2d Cir. 1977).

The government has sought to limit disclosure of certain aspects of the identity of CS1 and CS2 in order to protect them from potential harassment by the media and members of the BDSM community as well as to avert loss of employment potentially resulting from trial publicity. (See Govt. 10/27/06 Ltr. at 1, 3). In light of the explicit nature of the conduct that the witnesses will be testifying about – as contained in the government's proffer of their testimony – the court has determined that the witnesses's fear of harassment and reprisals is legitimate.[1] The

---

[1] The court also notes the government's allegation that, when the complaining witness, CS2, left the defendant, he offered a reward in the form of free membership to his website to anyone who located her. (See Govt. 10/27/06 Ltr. at 3 n.2).

2

court has also considered the defendant's interests in disclosure of the information and, accordingly, has sought to introduce measures that will safeguard CS1 and CS2 from adverse impacts resulting from their testimony while also protecting the defendant's interests to the degree possible.

It is the court's understanding that the restrictions related to cross-examination on the witnesses's home address and current place of employment adequately respond to the concerns of both the government and the defendant. The court has not heard any explanation for why disclosure of the witnesses's home address is important to the defendant's case, so long as cross-examination is permitted regarding the general area in which the witnesses reside. (See Def. 11/6/06 Ltr. at 2-3; 11/20/06 Tr. at 196.) Moreover, allowing cross-examination on the witnesses's previous places of employment and their current occupation without disclosing the witnesses's current place of employment appears to address the bases for the defendant's objections to this restriction. (See 11/6/06 Ltr. at 2-3; 11/20/06 Tr. at 197-99.)

As far as the court is aware, the defendant's out-of-court investigation of CS1 and CS2 has not been limited. Although it appeared that the defendant was already aware of the identities of CS1 and CS2, the court ordered the government to disclose their names to the defendant for the purposes of his out-of-court investigation. (12/12/06 Status Conf.) In addition, the court has authorized ex parte subpoena requests by the defendant related to his investigation. The court also understands that defense counsel is aware of the location in which CS2 resides, although he has agreed not to reveal that information to the defendant.

The remaining issue identified by the defendant relates to the use of pseudonyms at trial to refer to CS1 and CS2. The defendant has raised the following main concerns related to the use

3

of pseudonyms at trial: (1) it impermissibly undermines the presumption of innocence (11/6/06 Ltr., at 3); (2) it may prevent individuals who know CS1 or CS2 by their real names from coming forward with information useful to the defense (see 11/6/06 Ltr. at 2; 11/20/07 Tr. at 200); (3) one or more jurors may be acquainted with CS1 or CS2 but not realize this until after they are sworn in (12/12/06 Status Conf.; see 1/4/07 Tr. at 72); (4) one or more defense witnesses may know CS1 or CS2 by their real names, making it difficult to refer to them by pseudonyms (see 12/12/06 Tr.; 1/4/07 Tr. at 71); and (5) it will require redactions of documents (see 11/20/06 Tr. at 199). In order to accommodate some of the defendant's concerns and in recognition of the fact that both witnesses have common first names, the court proposed – and the government has agreed – that CS1 and CS2 be identified at trial by their real first names. (See 1/4/07 Tr. at 71-72.) The court also proposed – and the government agreed – to use pictures of all the witnesses to identify them to potential jurors during voir dire and to choose extra alternates in case a juror recognized one of the witnesses at trial. (12/12/06 Status Conf.; 1/4/07 Tr. at 72.)

The primary concern of the defendant related to anonymity not substantially addressed by the court's rulings is that concealing CS1 and CS2's last names at trial may prevent an individual from coming forward with information useful to the defense. The court determined that the risk to the witnesses should they testify using their real first and last names outweighed this possibility (See 11/20/06 Tr. at 194, 200.) Given that the defendant has already been actively investigating the complaining witness and has been able to use her screen name in attempting to elicit information from the BDSM community, the defendant's contention that there may be witnesses who come forward during trial with information after learning the witnesses's full names is purely speculative.

4

## Proposed Gag Order on the Press

In order to avert the defendant's concern about the use of pseudonyms for CS1 and CS2 prejudicing the jury, the court proposed that the witnesses be called by a different last name that sounds real. (See 11/20/06 Tr. at 195.) In order avoid false testimony, the court proposed a solution that would not ask the witnesses to state their names under oath. (See id.) However, the defendant has expressed concerns about this proposal, namely that it will require witnesses to lie about their identities and involve the court in misleading spectators to the trial or the public at large. (1/22/07 Status Conf.; see Def. 1/25/07 Ltr. at 2.) The defendant, therefore, proposes that the defendant's cross-examination as to the witnesses's names, places of employment and home addresses be unrestricted, and the court instead impose a gag order prohibiting the press from publishing this information. (1/22/07 Status Conf.; Def.1/25/07 Ltr. at 2.)

The court rejects the defendant's proposal to impose a gag order because it raises serious First Amendment problems, does not adequately protect the witnesses from harassment and reprisals, and appears to be only slightly more protective of the defendant's interests than the court's solution. The defendant's proposal is a prior restraint on the press of the kind deemed "most offensive" to the First Amendment, in that it limits dissemination to the public of information known to the press. See In Re Application of Dow Jones & Co., Inc., 842 F.2d 603, 608 (2d Cir. 1988). There is a "heavy presumption" against the validity of a prior restraint, particularly as applied to reporting on criminal proceedings. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559-60 (1976).

Moreover, the gag order does not appear to adequately resolve the witnesses's concerns about potential reprisals from the BDSM community based on their testimony. The gag order, as

proposed by the defendant, applies solely to the press. Any members of the public at large, or the BDSM community in particular, would not be subjected to the gag order and would be able to reveal the identities, address, and place of employment of CS1 and CS2. Thus, anyone in the BDSM community angered by CS1 or CS2's testimony for the prosecution would be able to retaliate against them by disclosing to their employers information in the public record. In addition, the court notes that its ability to enforce a gag order is limited to holding the responsible party in contempt of court. Should any member of the press violate the gag order, the potential damage to CS1 or CS2 would already have been incurred and the court's available remedy would not be able to redress this harm.

Furthermore, imposing a gag order appears to be only slightly more protective of the defendant's interest than restricting cross-examination of CS1 and CS2. As noted above, the primary remaining concern of the defendant not addressed by the court's rulings is that a member of the public may come forward with relevant information contradicting the witnesses's testimony. However, any member of the public in the courtroom will be able to identify the witnesses based on their physical appearance, their first names, their screen names, or other unrestricted aspects of their testimony. Should a gag order imposed by the court be effective, members of the public not in the courtroom would be unable to obtain the restricted information via the press. The only additional avenue for dissemination of this information appears to be for individuals attending the trial to spread the relevant information via word of mouth and the internet. However, given that the only restrictions placed on CS1 and CS2's cross-examination relate to their last names, current place of employment, and home addresses and that the defendant has already conducted an out-of-court investigation, it appears unlikely that revealing

this information in the courtroom makes it significantly more likely that members of the BDSM community or other individuals will come forward with relevant information during the trial.

Consequently, the court finds that any slight benefit the defendant might gain from having the court impose a gag order rather than restrict cross-examination is outweighed by the potential for reprisals against the government's witnesses as well as the First Amendment implications of a imposing a gag order directly on the press.

## Allowing Witnesses to Testify Using their First Names Only with an Appropriate Instruction

At the status conference held on January 22, 2007, the court requested the defendant to inform the court as to whether he preferred (a) having the witnesses testify using real first names and different last names, or (b) having the witnesses testify using their first names only with an appropriate instruction the jury. The defendant's letter of January 25, 2007 informs the court that, out of these two alternatives, he prefers the latter. Accordingly, the court will permit CS1 and CS2 to testify using their first names only.[2]

The defendant further requests that the court instruct the jury to the effect that (a) the witnesses are not testifying using their last names due to the sensitive nature of the conduct they will describe and the likelihood of embarrassing publicity; and (b) the court has no opinion on

---

[2] The government has informed the court that one or more witnesses for the defense may request the same treatment. However, the names of those individuals and their reasons for requesting this restriction have yet to be provided to the court. Therefore, this decision is restricted to the accommodations being granted to CS1 and CS2.

7

whether (1) the witnesses are testifying truthfully; (2) the conduct described in their testimony occurred as they have described it; and (3) whether that conduct is, in any way, inappropriate or unlawful. (Def.'s 1/25/07 Ltr. at 2.) The government objects to the instruction relating to the court's lack of opinion on the witnesses's credibility as unnecessary and inappropriately focusing the jury on the issue of witness credibility prior to their testimony. (Govt.'s 1/29/07 Ltr. at 1.) The court finds that it is appropriate to emphasize that the court takes no position on the credibility of the witnesses, so as to prevent the limitations on release of the witnesses's last names from being interpreted as an implied endorsement of the witnesses's testimony. However, the court finds that this objective is adequately fulfilled by an instruction that merely indicates that the court has no opinion on whether the witnesses are testifying truthfully; the additional two proposals by the defendant in that regard are redundant.

For these reasons, CS1 and CS2 will be permitted to testify using their first names only and cross-examination on their last name will be prohibited. The court will instruct the jury to the effect that CS1 and CS2 are testifying under their first names only due to the sensitive nature of the conduct they will describe and the likelihood of embarrassing publicity, and that the court has no opinion on whether the witnesses are testifying truthfully.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: January 31, 2007
Brooklyn, New York

SERVICE LIST:

*Attorney for the United States*
Pamela Ki Mai Chen
United States Attorney
Eastern District of New York
147 Pierrepont Street
Brooklyn, NY 11201


*Attorney for the Defendant*
Maurice H. Sercarz
Sercarz & Riopelle
152 West 57th Street
24th Floor
New York, NY 10019