(NOTE: Identify Changes with Asterisks (*))

# UNITED STATES DISTRICT COURT

## District of

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| V. | |
| GLENN MARCUS | Case Number: 05 CR 457 (ARR) |
| | USM Number: 73030-053 |

**Date of Original Judgment:** 9/7/2007
(Or Date of Last Amended Judgment)

MILDRED WHALEN ,ESQ
Defendant's Attorney

**Reason for Amendment:**

- [✓] Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))
- [ ] Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))
- [ ] Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))
- [ ] Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

- [ ] Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))
- [ ] Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))
- [ ] Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))
- [ ] Direct Motion to District Court Pursuant [ ] 28 U.S.C. § 2255 or [ ] 18 U.S.C. § 3559(c)(7)
- [ ] Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

- [ ] pleaded guilty to count(s) _____
- [ ] pleaded nolo contendere to count(s) _____
   which was accepted by the court.
- [✓] was found guilty on count(s)   two of the superseding indictment.
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 1589(1) & (2) | FORCED LABOR | 5/12/2005 | 2 |

The defendant is sentenced as provided in pages 2 through ___10___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

- [ ] The defendant has been found not guilty on count(s) _____
- [ ] Count(s) _____ [ ] is [ ] are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

3/5/2012
Date of Imposition of Judgment

/s/(ARR)

Signature of Judge

ALLYNE R. ROSS, US.D.J.
Name of Judge                    Title of Judge

3/5/2012
Date

DEFENDANT: GLENN MARCUS
CASE NUMBER: 05 CR 457 (ARR)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of

NINETY SIX (96) MONTHS

☑ The court makes the following recommendations to the Bureau of Prisons:

THAT THE DEFT BE PLACED IN A MEDICAL CARE LEVEL THREE OR FOUR FACILITY.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m ☐ p.m.    on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By_____
DEPUTY UNITED STATES MARSHAL

DEFENDANT: GLENN MARCUS

CASE NUMBER: 05 CR 457 (ARR)

Judgment—Page __3__ of __10__

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of

**FIVE (5) YEARS.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment, or if such prior notification is not possible, then within forty eight hours after such change;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record, personal history, or characteristics and shall permit the probation officer to make such notifications and confirm the defendant's compliance with such notification requirement.

DEFENDANT: GLENN MARCUS
CASE NUMBER: 05 CR 457 (ARR)

## ADDITIONAL SUPERVISED RELEASE TERMS

1) DEFT SHALL PARTICIPATE IN A MENTAL HEALTH TREATMENT PROGRAM, WHICH MAY INCLUDE PARTICIPATION IN A TREATMENT PROGRAM FOR SEXUAL DISORDERS, AS APPROVED BY THE PROBATION DEPARTMENT. DEFT SHALL CONTRIBUTE TO THE COST OF SUCH SERVICES RENDERED OR ANY PSYCHOTROPIC MEDICATIONS PRESCRIBED VIA CO-PAYMENT OR FULL PAYMENT IN AN AMOUNT TO BE DETERMINED BY THE PROBATION DEPARTMENT, BASED UPON THE THE DEFT'S ABILITY TO PAY AND/OR THE AVAILABILITY OF THIRD PARTY PAYMENT. AS PART OF THE TREATMENT PROGRAM FOR SEXUAL DISORDERS, THE DEFT SHALL PARTICIPATE IN POLYGRAPH EXAMINATIONS TO OBTAIN INFORMATION NECESSARY FOR RISK MANAGEMENT AND CORRECTIONAL TREATMENT.

2) DEFT SHALL NOT HAVE CONTACT WITH THE VICTIM IN THE INSTANT OFFESNE. THIS MEANS THAT HE SHALL NOT ATTEMPT TO MEET IN PERSON, COMMUNICATE BY LETTER, TELEPHONE, OR THROUGH A THIRD PARTY, WITHOUT KNOWLEDGE AND PERMISSION OF THE PROBATION DEPARTMENT.

3) DEFT SHALL NOT POSSESS BINDINGS, RESTRAINTS, HANDCUFFS OR OTHE SADOMASOCHISTIC PARAPHERNALIAS.

4) UNLESS OTHERWISE INDICATED IN THE TREATMENT PLAN PROVIDED BY THE SEX OFFENDER TREATMENT PROGRAM, THE DEFT IS PROHIBITED FROM VIEWING, OWNING OR POSSESSING ANY OBSCENE, PORNOGRAPHIC, OR SEXUALLY STIMULATING VISUAL OR AUDITORY MATERIAL INCLUDING TELEPHONE ELECTRONIC MEDIA, COMPUTER PROGRAMS, OR COMPUTER SERVICES THAT HAVE A REASONABLY DIRECT RELATIONSHIP TO THE OFFENDER'S DEVIANT BEHAVIOR PATTERN. THE TERM " PORNOGRAPHIC " AS USED IN DEFT'S CONDITIONS OF SUPERVISED RELEASE REFERS TO ANY VISUAL DEPICTION, INCLUDING ANY PHOTOGRAPH, FILM, VIDEO, PICTURE, OR COMPUTER OR COMPUTER-GENERATED IMAGE OR PICTURE, WETHER MADE OR PROUDUCED BY ELECTRONIC, MECHANICAL, OR OTHER MEANS, OF SEXUALLY EXPLICIT CONDUCT. THE TERM " SEXUALLY EXPLICIT CONDUCT " MEANS ACTUAL OR SIMULATED (a) SEXUAL INTERCOURSE, INCLUDING GENITAL-GENITAL, ORAL-GENITAL, ANAL-GENITAL, OR ORAL-ANAL, WETHER BETWEEN PERSONS OF THE SAME OR OPPOSITE SEX; (b) BESTIALITY; (c) MASTURBASTION; (d) SADISTIC OR MASOCHISTIC ABUSE; OR (e) LASCIVIOUS EXHIBITION OF THE GENITALS OR PUBLIC AREA OF ANY PERSON.

5) DEFT IS NOT TO USE A COMPUTER, INTERNET CAPABLE DEVICE, OR SIMILAR ELECTRONIC DEVICE TO ACCESS PORNOGRAPHIC WEBSITES OF ANY KIND, INCLUDING WEBSITES DEPICTING SADOMASOCHISTIC IMAGES. DEFT SHALL COOPERATE WITH THE U.S. PROBATION DEPARTMENT'S COMPUTER AND INTERNET MONITORING PROGRAM. COOPERATION SHALL INCLUDE, BUT NOT BE LIMITED TO, IDENTIFYING COMPUTER SYSTEMS, INTERNET CAPABLE DEVICES, AND/OR SIMILAR ELECTRONIC DEVICES THE DEFT HAS ACCESS TO, AND ALLOWING THE INSTALLATION OF MONITORING SOFTWARE/HARDWARE ON SAID DEVICES, AT THE DEFT'S EXPENSE. DEFT MAY BE LIMITED TO POSSESSING ONLY ONE PERSONAL INTERNET CAPABLE DEVICE, TO FACILITATE OUR DEPARTMENT'S ABILITY TO EFFECTIVELY MONITOR HIS INTERNET RELATED ACTIVITIES. DEFT SHALL ALSO PERMIT RANDOM EXAMINATIONS OF SAID COMPUTER SYSTEMS, INTERNET CAPABLE DEVICES, AND RELATED COMPUTER MEDIA, SUCH AS CD'S, UNDER HIS CONTROL.

6) DEFT SHALL SUBMIT HIS PERSON, RESIDENCE, PLACE OF BUSINESS, VEHICLE OR ANY OTHER PREMISES UNDER HIS CONTROL TO A SEARCH ON THE BASIS THAT THE PROBATION OFFICER HAS REASONABLE BELIEF THAT CONTRABAND OR EVIDENCE OF A VIOLATION OF THE CONDITIONS OF RELEASE MAY BE FOUND. THE SEARCH MUST ALSO BE CONDUCTED IN A REASONABLE MANNER AND AT A REASONABLE TIME; FAILURE TO SUBMIT TO A SEARCH MAY BE GROUNDS FOR REVOCATION AND THE DEFT SHALL INFORM ANY OTHER RESIDENT THAT THE PREMISES MAY BE SUBJECT TO SEARCH PURSUANT TO THIS CONDITION.

7) DEFT SHALL COMPLY WITH THE ORDER OF RESTITUTION IN THE AMOUNT OF $54,497.00.

DEFENDANT: GLENN MARCUS
CASE NUMBER: 05 CR 457 (ARR)

Judgment — Page __5__ of __10__

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ | $ | $ 54,497.00 |

☐☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| TOTALS | $ _____ | $ _____ | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

  ☐ the interest requirement is waived for    ☐ fine    ☐ restitution.

  ☐ the interest requirement for    ☐ fine    ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: GLENN MARCUS
CASE NUMBER: 05 CR 457 (ARR)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A** ☐ Lump sum payment of $ _____ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:

    RESTITUTION IN THE AMOUNT OF 54,497.00 IS IMPOSED WHICH IS DUE IMMEDIATELY AND PAYABLE AT A RATE OF $25.00 PER QUARTER WHILE IN CUSTODY, AND 10% OF GROSS INCOME PER MONTH WHILE ON SUPERVISED RELEASE. ALL PAYMENTS SHALL BE SUBMITTED TO THE CLERK OF THE COURT FOR THE EASTERN DISTRICT OF NEW YORK AT 225 CADMAN PLAZA EAST, BROOKLYN, NY 11201.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

1  position that you're relying on Mr. Sercarz' submission?

2           MS. WHALEN: Yes.

3           THE COURT:  Is there anything else anyone wants to

4  say about that?

5           MS. WHALEN:   No, Your Honor.

6           THE COURT:  Okay.  So the probation department has

7  calculated the defendant's advisory guideline on the forced

8  labor count, now the only count of conviction, at level 37

9  criminal history category one, calling for a range of

10 imprisonment of 210 to 262 months.

11          Current defense counsel has contested this

12 calculation by joining in the arguments of prior trial counsel

13 in his letters of August 14th, 17th, and 23rd, 2007.

14          There prior counsel had contested the calculation on

15 the ground that three of the enhancements applied were

16 erroneous, contending that their application would result in

17 impermissible double counting. Specifically, counsel disputed

18 on this ground the four level enhancement under guideline

19 2A3.1(b)(1) for use of force and threat of serious bodily

20 injury;

21          The two level enhancement under guideline

22 2A3.1(b)(4)(B) for the infliction of serious bodily injury;

23          And the two level enhancement under guideline 3A1.3

24 for physical restraint of the victim.

25          Each of these arguments of double counting was

1    addressed in detail and rejected at the outset of the prior

2    sentencing proceeding on September 7, 2007. As current counsel

3    has neither amended nor embellished the prior arguments, I

4    adhere to my reasoning as expressed on that date and hereby

5    incorporated by reference pages 4 to 13 of the prior

6    sentencing transcript in so far as they relate to the

7    guideline calculation on the forced labor count.

8         Accordingly, I find that the advisory sentencing

9    guideline is 210 to 262 months.

10        With that, Ms. Whalen, let me let you go ahead.

11        MS. WHALEN:  Thank you, Your Honor.

12        Your Honor, just, my review of the case on appeal I

13   am not exactly clear on what is left open in this case.

14   Clearly, sentencing remains an issue open for appeal.  To the

15   extent that there are any issues raised in the rule 29 and

16   rule 33 motion, I will continue those motions.

17        I -- with respect to the sentencing guidelines, I am

18   adding nothing no, so we accept the Court's prior ruling on

19   that.  This is simply to preserve any record for appeal.

20        THE COURT: You can preserve whatever exists on the

21   record.

22        MS. WHALEN:  Thank you, Your Honor.

23        Your Honor, I guess my client maintains his

24   innocence and I, however, am going to address what I think are

25   the real -- what I see as the most difficult sentencing aspect

1  of this case, and I think it's arisen in Mr. Marcus' prior
2  history and his prior dealings with people through his
3  business, through his friendships, through his mentoring of
4  young people, and what I think we've demonstrated to the Court
5  since his father's death and through the illness of his aunt
6  and her subsequent death, I would think that the hardest issue
7  for the Court to reconcile are the facts that were alleged at
8  the trial that the jury found to be truthful -- the conduct
9  that the jury found to be truthful at the trial, and every
10 other aspect of Mr.  Marcus' life where he demonstrates
11 compassion, where he demonstrates empathy, where he
12 demonstrates a loving and a caring and a gentleness of
13 behavior that -- from reading the record, from reading the
14 sentencing submission is in such stark contrast as to make it
15 almost incomprehensible how these situations -- the situation
16 could have arisen. I think that Dr. Berrill's evaluation is
17 very telling in that the real danger with this kind of sexual
18 activity is that an individual doesn't hear the word no and
19 goes on to commit acts that were acceptable and perhaps
20 sexually enjoyable when the word was yes, but once the word no
21 is said turns into horrific acts.
22       I have asked the Court to consider a dramatically
23 different sentence than the extraordinarily downward departure
24 that you imposed on the last sentencing, and the reason for
25 that, for the most part, is Mr. Marcus' mother who is here in

1    torture you put me through, the coat hanger brand, which

2    caused third degree burns, for which you would not let me get

3    medical attention, the cigarette burns, the knife carvings,

4    the piercing, the unstoppable beatings, etcetera.

5            You have impacted my family.  My elderly parents

6    have such disgust, hatred towards you and what you did to me,

7    their baby girl.

8            You have found humor in what you did to me, and

9    countless other women.  How a human being can see humor in the

10   pain, torture, manipulation and brain washing of others is

11   beyond my comprehension.

12           You, Glenn Marcus, have not only stated but have

13   proven that you have no regard towards the laws this country.

14           I pray that you will get your just reward today for

15   the life you have lived and the torture you have caused.

16           Today you may get a limited sentence on this earth

17   but you have given me a life sentence.

18           You may be appearing before an earthly judge today

19   but someday you will deal with god's court and his sentencing.

20           THE COURT:  Is that complete?

21           JODY:  Yes, Your Honor.

22           THE COURT: Okay.  Thank you, very much.

23           At the original 2007 sentencing, when there was a

24   second conviction for sex trafficking but an identical

25   advisory guideline calculation, I imposed a sentence of nine

1  years or 108 months imprisonment. I did so after weighing a

2  number of arguments in mitigation of sentence, several of

3  which are pursued again here. In addition to the circumstances

4  of the instant offense that render it outside the heartland of

5  a typical forced labor conviction, current counsel reasserts,

6  under somewhat altered circumstances since defendant's first

7  sentence, the defendant's health issues and family

8  responsibilities. Counsel also points to the five years or

9  five and a half years defendant has spent under house arrest

10 -- two years pending trial and additional three years pending

11 appeal -- and has contended in a written submission based on

12 her interpretation of the psychosexual evaluation of Dr.

13 Berrill conducted in 2007 the defendant's risk of recidivism

14 and danger to the community would be satisfied by a sentence

15 of time served, now 16 months, to be followed by an additional

16 five years of house arrest. For the reasons that follow, I am

17 not satisfied that the defense's requested sentence could

18 begin to satisfy the goals of sentence delineated in the

19 sentencing statute 3553(a). On the other hand, primarily in

20 reliance on the extended period of house arrest the defendant

21 has undergone, much of which has been accompanied by the

22 pressures of incertitude concerning his future sentence,

23 coupled with some consideration of his somewhat deteriorated

24 health, that that might render incarceration more difficult

25 for him, and the mitigating circumstances identified at the

1  prior sentence, I conclude that a prison sentence only very

2  moderately below the one previously posed is appropriate.

3       Turning first to the nature and circumstances of the

4  offense, as the defense acknowledges, the crime of forced

5  labor achieved through facts constituting aggravated sexual

6  abuse is a very serious offense.  But the seriousness of

7  defendant's conduct cannot be fairly quantified without

8  reference to the evidence in the trial record establishing the

9  horrific cruelty and violence he visited upon his unwilling

10 victim. The Court of Appeals very aptly summarized some of

11 that evidence in its most recent opinion, and we've heard of

12 it again from the government, as well as from the victim.

13      Marcus' physical and psychological torture of Jody

14 persisted over a lengthy period of time and has resulted in

15 lasting physical and mental injury.  Indeed, as we have just

16 heard, injury to this day.

17      This was established not on by the victim's impact

18 statement, but also, by psychiatric records documenting that

19 the abuse by the defendant resulted in profound and sustained

20 psychological trauma that necessitated medical intervention

21 over a lengthy period of time. The records also documented

22 diagnoses of depression, anxiety and PTSD that continued

23 through the last sentence and based on the statement of the

24 victim, certainly continue to this time.

25      Thus viewed in the light of the record of evidence,

the conduct underlying defendant's conviction was of

aggravated seriousness.  After brutally tormenting,

terrorizing and torturing his victim, he further degraded and

exploited her by posting her pictures on his website from

which he earned income and forced her to manage the website

without compensation.

On the other hand, as I stated at the original

sentence, I agree that the nature and circumstances of the

offense renders defendant's case outside the heartland of

cases that Congress intended the guidelines to encompass. In

particular, I find that the BDSM context in which Marcus'

conduct occurred was not considered by the Sentencing

Commission in formulating the guidelines and constitutes a

mitigating factor.  The government has never taken a position

on this argument and the probation department has agreed that

the nature of the relationship between the defendant and the

victim may make this case atypical and may be a mitigating

factor.

Although it is clear that the forced labor guideline

and the corresponding cross reference to the criminal sexual

abuse guideline are literally applicable, the guidelines do

not appear to contemplate the type of behavior at issue in

this case, namely the involvement of both the defendant and

the victim in an alternative sexual lifestyle that blends sex

and violence.  In the various incidents described by the

1   victim, the sexual abuse, use of force, and physical restraint

2   were each intertwined to an unusual extent and in a manner

3   that differentiates this case from the type of conduct within

4   the purview of the Sentencing Commission when constructing the

5   forced labor and equal abuse guidelines. The unusual aspects

6   of this case, which is unlike any with which I am familiar,

7   mitigates somewhat the seriousness of the offense.

8          As to the history and the characteristics of the

9   defendant, he is a 58 year-old divorced man with one adult

10  daughter and no prior convictions. Apart from the Slavespace

11  website that is part of this case, he has a scant employment

12  history and has admitted that he was often supported almost

13  entirely by the women with whom he lived.

14         It is of considerable concern that, according to the

15  undisputed evaluation of Dr. Berrill, defendant takes no

16  responsibility for his criminal conduct, instead blaming the

17  victim, calling her a liar, insisting that everything done to

18  her was consensual, and characterizing her as delusional in

19  the claims she has made against him.  Defendant's complete

20  lack of self-reproach or remorse, coupled with his insistence

21  that his conduct was perfectly justified as he was the master

22  and she was his slave is especially troubling as, according to

23  Dr. Berrill, defendant's grandiose view of himself and his

24  narcissim contribute to his inability to empathize with his

25  victim and fuel his failure in judgment in assessing whether

1  the response of his victim to his extreme aggression is, in

2  fact, consensual.

3       Defense counsel has identified three personal

4  history issues urged to be mitigating in defendant's case --

5  his health, the circumstance of his elderly and ailing mother,

6  and the lengthy period of time he has spent on house arrest

7  pending trial and the completion of the appellate process.

8  While these matters warrant some consideration in assessing a

9  proper balance of the sentencing factors, I view them as only

10  marginally mitigating.

11       Even before his initial incarceration, it was known

12  that defendant was suffering from coronary artery disease,

13  hypertension, emphysema, gastroesophageal reflux disease,

14  dyslipidemia, diverticulosis, pulmonary nodules, obesity and

15  anxiety.  Counsel now argues primarily that his condition

16  deteriorated as a result of his confinement, and is even

17  further complicated by recent diagnoses of diabetes, leg

18  edema, and possible liver or gall bladder issues. While

19  counsel complains that defendant asserts that a lack of

20  treatment during his incarceration at Fort Dix exacerbated the

21  seriousness of his ailments, particularly his heart problems,

22  defendant's doctors advise that diet, exercise, and weight

23  loss have improved defendant's physical condition and counsel

24  has not persuaded me that such self-help cannot continue

25  during incarceration. Moreover, after reviewing the

1 defendant's medical records, the Bureau of Prisons assured the

2 Court that it is well equipped to handle defendant's

3 condition, that it is able to provide the medication he is

4 currently prescribed, and that if designated to a general

5 population institution, he would likely be assigned to  five

6 identified specialized clinics that together target all of his

7 health issues. Although his medical conditions should be

8 accorded some weight in his sentence, they do not warrant

9 significant weight.

10      The circumstances of defendant's 83 year-old infirm

11 mother are also extremely unfortunate, but I am in agreement

12 with the government that they merit little weight in the

13 calculation of his sentence. The record establishes that she

14 has access to ample financial resources to ensure proper care

15 through outside help or home health aides, and her other son

16 and her granddaughter -- defendant's brother and adult

17 daughter -- are both in a position to assist in providing

18 Mrs. Marcus with care and support, albeit at some level of

19 inconvenience to themselves. Under the circumstances, the

20 defendant's presence is hardly indispensable to insure his

21 mother's welfare.

22      Finally, I am in agreement with defense counsel that

23 defendant's lengthy period of house arrest, which pending

24 appeal is a total of three years, and together with pretrial,

25 house arrest, over five years, is an appropriate factor to

1   consider in sentence, but of course, as the government

2   observes, it is not the equivalent of incarceration. In my

3   view -- not disputed by the government -- defendant's

4   five-year home detention warrants a limited reduction in

5   sentence both because of the duration of the constraints

6   placed on defendant and because defendant will be five years

7   older at the time of his release than he would have been

8   absent the delay.

9           Turning to the needs of deterrence, the risks of

10  recidivism, and the need for just punishment and the

11  protection of the public, I am in marked disagreement with

12  defense counsel's written submission with respect to her

13  interpretation of the report of the psychosexual evaluation

14  performed by Dr. Berrill.  Largely in reliance on the

15  statement in the report that defendant is not a danger to the

16  public "per se,"  counsel concludes that Dr. Berrill finds no

17  need to incarcerate the defendant "to achieve punishment,

18  deterrence or protection of the community." In my view the

19  actual context of this statement in the report compels a

20  contrary conclusion. As Dr.  Berrill's explicitly clarifies,

21  because of the defendant's pronounced narcissim, impaired

22  judgment and lack of empathy, defendant remains at serious

23  risk of not only continued participation in BDSM activities,

24  but also of participation in such conduct with unconsenting

25  victims, plainly presenting a persistent danger of the

1  identical degrading, brutal and dangerous conduct that is the

2  subject of this case.

3          In a similar vein to this argument, counsel explains

4  that her client did not voluntarily seek psychological

5  treatment in the intervening years, not because of any

6  dangerousness, but because of his lack of insight and

7  judgment. The reasoning is circular. It is precisely the

8  defendant's lack of insight and judgment that render him a

9  persistent danger to others, and a potential, if not likely,

10  recidivist, as it is doubtful that he will avoid such misdeeds

11  in the future if he does not or adamantly refuses to

12  acknowledge the wrongfulness of his conduct towards his victim

13  in this case.

14          Based on all of the factors and circumstances

15  discussed above, I conclude that an incarceratory sentence of

16  96 months is sufficient but not unduly severe to an accomplish

17  the goals of sentencing. I strongly recommend that defendant

18  be placed in the Sex Offender Treatment Program at FCI Devons

19  as soon as he becomes eligible, as I view treatment as

20  essential for protection of the community.

21          I, therefore, sentence the defendant to the custody

22  of the Attorney General for a period of 96 months, to be

23  followed by a five-year period of supervised release with the

24  following special conditions:

25          He is required to makes restitution in the amount of

1   $54,497 due immediately and payable to the Clerk of Court at

2   the rate of $25 per quarter while in custody and ten percent

3   of gross income per month while on supervised release.

4            The defendant shall participate in a mental health

5   treatment program which may include participation in a

6   treatment program for sexual disorders as approved by the

7   probation department.

8            The defendant shall contribute to the cost of such

9   services rendered for any psychotropic medications prescribed

10  by copayment or full payment in amount to be determined by the

11  probation department based on defendant's ability to pay

12  and/or the availability of third party payment.

13           As a result of the treatment -- as part of the

14  treatment program for sexual disorder, the defendant will

15  participate in polygraph examinations to obtain information

16  necessary for risk management and correctional treatment.

17           The defendant shall not have contact with the victim

18  in the instant offense. This means he should not attempt to

19  make in-person contact, communicate by letters, telephone or

20  through a third party without the knowledge and permission of

21  the probation department.

22           The defendant shall not possess bindings,

23  restraints, handcuffs or other sadomasochistic paraphernalia.

24  Unless otherwise indicated in the treatment plan provided by

25  the Sex Offender Treatment Program, the defendant is

1    prohibited from viewing, owning or possessing any obscene,

2    pornographic or sexually stimulating visual or auditory

3    material, including telephone, electronic media, computer

4    programs, or computer services that have a reasonably direct

5    relationship to the offender's deviant behavior pattern.

6         The defendant is not to use a internet capable

7    device or similar electronic device to access pornographic

8    websites of any kind, including websites depicting

9    sadomasochistic images.

10        The defendant shall cooperate with the U.S.

11   Probation Department Computer and Internet Monitoring Program.

12   Cooperation should include, but not be limited to, identifying

13   computer systems, internet capable devices and/or similar

14   electronic devices the defendant has access to, and allowing

15   the installation of monitoring software, hardware on said

16   devices at the defendant's expense.

17        The defendant may be limited to possessing only one

18   personal internet capable device to facilitate the probation

19   department's ability to effectively monitor his internet

20   related activities.

21        The defendant shall also permit random examinations

22   of his computer symptoms, internet capable devices, similar

23   electronic devices, and related computer media such as CDs,

24   under his control.

25        The defendant shall submit his, person, residence,

1   place of business, vehicle or any other premises under his

2   control to a search on the basis that the probation officer

3   has reasonable belief that contraband or evidence of a

4   violation of conditions of release may be found.  The search

5   must be conducted in a reasonable manner and at a reasonable

6   time.

7          Failure to submit to a search may be grounds for

8   revocation, and the defendant shall inform any other resident

9   of the premises that the premises may be subject to search

10  pursuant to this condition.

11         The defendant shall not possess a firearm,

12  ammunition or destructive device.

13         I understand that the mandatory special assessment

14  of $100 has already been paid by the defendant.

15         Is there a request for designation?

16         MS. WHALEN:   I would ask request a category three

17  or category care facility with the Bureau of Prisons as close

18  to New York as possible.

19         MS. CHEN:   Your Honor, may I make one additional

20  request with respect to the supervised release?  You had

21  mentioned that the defendant cannot contact the victim.  Could

22  we add as a form of prohibited communication via the internet

23  or by any electronic media?

24         THE COURT:   Yes.

25         MS. CHEN:   Also the defendant is precluded from

1  posting anything on the internet about the victim.

2          THE COURT: Yes.  Definitely.

3          Mr. Marcus, as you know, you may appeal the

4  sentence. A notice of appeal must be filed within 14 days. As,

5  as I understand it, you cannot afford counsel, so counsel will

6  be appointed to represent you on appeal.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25